U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 2 5 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

SEALED

# United States District Court

_____NORTHERN_____   DISTRICT OF _____TEXAS_____

UNITED STATES OF AMERICA

V.

TSHOMBE ANDERSON (01)
BRENDA ANDERSON (02)
LYDIA BANKHEAD (03)

**COMPLAINT**
CASE NUMBER: 3-15-MJ- 592 BF

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___July 2011 and continuing until on or about August 2015___, in the Dallas Division of the Northern District of Texas, defendant(s) did,

knowingly devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, by depositing and causing to be deposited any matter or thing for delivery through the United States Postal Service and private and commercial interstate carriers, for the purpose of executing and attempting to execute a scheme and artifice to defraud;

in violation of Title __18__, United States Code, Section(s) __2 and 1341_____.

knowingly and with the intent to deprive the owner of the use and benefit of the money, embezzle, steal, and convert to their use or the use of another money belonging to the U.S. Department of Labor and U.S. Postal Service, departments or agencies of the United States, namely, Workers Compensation Program benefits, to which defendants knew neither they nor others were entitled, having a value greater than $22,000,000.00;

in violation of Title __18__, United States Code, Section(s) __2 and 641_____.

knowingly and willfully executed and attempted to execute the scheme and artifice, described in the attached affidavit, to defraud and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the Department of Labor Office of Worker's Compensation Fund, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

in violation of Title __18__, United States Code, Section(s) __2 and 1347_____.

I further state that I am a(n) <u>Special Agent with the Department of Labor -OIG</u> and that this

complaint is based on the following facts:

> See attached Affidavit of Special Agent Kristi Frank, (DOL-OIG) which is incorporated
> and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:   <u>XX</u> Yes   No

Signature of Complainant
KRISTI FRANK
Special Agent, DOL-OIG

Sworn to before me and subscribed in my presence, on this _25_ day of _August_, 2015, at
Dallas, Texas.

PAUL D. STICKNEY
<u>UNITED STATES MAGISTRATE JUDGE</u>
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kristi Frank, a Special Agent with the United States Department of Labor, Office of Inspector General, being duly sworn, state as follows:

### AFFIANT'S BACKGROUND

1.      I have been employed as a Special Agent with the United States Department of Labor, Office of Inspector General (DOL-OIG), currently assigned to the Dallas Region. I have been a Special Agent for over two years. I have worked with other agents, police officers, and law enforcement personnel who have extensive criminal investigative experience and training. During my tenure as a Special Agent, I have been trained in the execution of search warrants for documents and other evidence in cases involving violations of federal law, including but not limited to: Title 18, United States Code, Section 1347 (Health Care Fraud), Title 18, United States Code, Section 1349 (Conspiracy to Commit Health Care Fraud), and Title 18, United States Code, Sections 1956 & 1957 (Money Laundering). As a Special Agent, my duties included investigating health care fraud, theft of government funds, and money laundering.

2.      I am currently assigned to the Dallas, Texas Area Field Office. I am assisting in this investigation by the Department of Labor, Office of Inspector General (DOL-OIG) and the United States Postal Service, Office of Inspector General (USPS-OIG) into Tshombe Anderson, Brenda Anderson, their co-conspirators, and their durable medical equipment companies. As a result of this investigation, Affiant believes the Anderson's and their co-conspirators fraudulently obtained more than $22,000,000.00.

## PURPOSE OF AFFIDAVIT

3.     This affidavit is made in support of a criminal complaint in the case of the

United States v. Tshombe Anderson, Brenda Anderson, and Lydia Bankhead.

4.     Affiant has probable cause to believe that the defendants, Tshombe

Anderson, Brenda Anderson, and Lydia Bankhead have knowingly and willfully

executed and attempted to execute a scheme and artifice, described below, to defraud and

obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by and under the custody and control of the

Department of Labor Office of Worker's Compensation Fund, a health care benefit

program as defined in Title 18, United States Code, Section 24(b), in connection with the

delivery of and payment for health care benefits, items, and services, in violation of 18

U.S.C. §§ 2 and 1347.  During the course of this health care fraud scheme, defendants

Tshombe Anderson, Brenda Anderson, and Lydia Bankhead have deposited and caused

to be deposited packages for delivery through the United States Postal Service and

private and commercial interstate carriers, for the purpose of executing and attempting to

execute a scheme and artifice to defraud in violation of 18 U.S.C. §§ 2 and 1341. Further,

through this scheme defendants Tshombe Anderson, Brenda Anderson, and Lydia

Bankhead did, knowingly and with the intent to deprive the owner of the use and benefit

of the money, embezzle, steal, and convert to their use or the use of another money

belonging to the U.S. Department of Labor and U.S. Postal Service, departments or

agencies of the United States, namely, Workers Compensation Program benefits, to

**Affidavit in Support of Criminal Complaint – Page 2**

which defendants knew neither they nor others were entitled, having a value greater than in violation of 18 U.S.C. § 2 and 641.

5.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth facts that I believe are necessary to establish probable cause of a violation of federal criminal offenses, specifically 18 U.S.C. § 1347 (Health Care Fraud), 18 U.S.C. § 1341 (Mail Fraud), and 18 U.S.C. §641 (Theft of Government Funds).

## FACTS DEMONSTRATING PROBABLE CAUSE

6.     I have probable cause to believe that Tshombe Anderson, Brenda Anderson, Lydia Bankhead, and others have violated one or more of the following statutes: 18 U.S.C. § 1347 (health care fraud); 18 U.S.C. § 1349 (conspiracy to commit health care fraud); 18 U.S.C. § 1341 (mail fraud); and 18 U.S.C. §§ 1956 and 1957 (money laundering).

7.     The statements in this affidavit are based upon my own observations, information provided to me by Special Agents of the USPS-OIG and DOL-OIG, information provided by reliable witnesses, and public source and business records.

8.     Because this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to search the properties listed above.

**Federal Employees Compensation Act**

9.      The Federal Employees Compensation Act (FECA) provides monetary compensation, medical care, and vocational rehabilitation to civilian employees of the United States government, including postal workers, who suffer work-related injury or occupational disease in the performance of duty.  FECA is administered by the U.S. Department of Labor, Office of Workers' Compensation Programs (OWCP).  OWCP offices are located in 12 districts throughout the United States.  All monetary and medical benefits to employees are funded by the Employees' Compensation Fund, authorized by 5 U.S.C. § 8147.  The Employee's Compensation fund is maintained by appropriations from Congress and is reimbursed for its payouts annually by assessing each federal agency for the amounts paid to its employees in workers' compensation benefits during the previous year.

10.      All health care providers providing services through OWCP are required to enroll with Affiliated Computer Services which is OWCP's designated bill processing agent.  After enrolling with Affiliated Computer Services, providers may submit claims for payment by OWCP for certain services and durable medical equipment (DME) using an assigned Affiliated Computer Services provider number.  By completing and submitting Form OWCP-1168, providers certify that they have satisfied all applicable federal and state licensure and regulatory requirements.

11.      In order to receive reimbursement from OWCP, providers must submit Health Insurance Claim Form 1500 (HCFA-1500) seeking payment for services rendered or equipment provided.

**Affidavit in Support of Criminal Complaint – Page 4**

12.     When an HCFA-1500 is processed and it is determined that payment is warranted, OWCP pays the provider either by check or direct deposit into a bank account designated by the provider.  A provider's claims for services to multiple patients and dates of service may be satisfied by a single OWCP payment to the provider.

13.     When providers both submit claims to, and accept payment from, OWCP they certify that the service for which reimbursement is sought was performed as described and was necessary, appropriate, and properly billed in accordance with accepted industry standards.

## Best First Administration DME of Austin, LLC

14.     Union Treatment Center (hereinafter "Union") is a treatment and rehabilitation center with offices in Austin, Corpus Christi, Killeen and San Antonio, Texas.  Union specializes in the treatment of injured state and federal worker's compensation patients.  As part of its treatment, Union doctors may prescribe DME (e.g. Biofreeze[1], crutches, infusion pumps and supplies, and oxygen equipment) for use in the patient's home.

15.     Tshombe Anderson worked as an attorney for Union from at least February 2010 to May 2011.  In or about February 2010, Tshombe Anderson's wife, Brenda Anderson, began working for Union.  Shortly thereafter, Brenda Anderson formed Best First Administration DME of Austin, LLC (BFA) which became Union's in-house DME provider. BFA enrolled officially as a provider with OWCP through Affiliated Computer Services on April 9, 2010.  Tshombe Anderson signed the provider enrollment.

---

[1] Biofreeze is a brand of medicated ointment/gel that relieves pain when applied to the body.

16.     Once BFA was up and running, a Union doctor would provide Brenda Anderson with a patient's prescription for certain DME items.  Brenda Anderson/BFA would then send the prescribed DME to the patient.  BFA billed OWCP by submitting an HCFA-1500 through the Affiliated Computer Services account.  OWCP would then direct deposit the payment for the DME into BFA's designated bank account.

17.     In May 2011, Union fired Brenda and Tshombe Anderson (collectively the "Andersons") as a result of an audit which revealed that they appeared to be engaging in fraudulent billing practices.  In June 2011, Union created their own in-house DME company to provide their patients with supplies necessary for treatment.  BFA, however, continued to bill OWCP for DME associated with the claims of Union patients.[2]

18.     Because BFA is an independent entity enrolled with Affiliated Computer Services and OWCP, Union could not terminate BFA's accounts with Affiliated Computer Services and OWCP when the Andersons were fired.

19.     After being fired by Union, the Andersons submitted an amendment to BFA's provider enrollment on July 9, 2011, changing the company's address with OWCP to 2800 E. Whitestone Blvd., Cedar Park, Texas 78713 and designating a new bank account for payment, Bank of America (BOA) account #XXXX1831, which Brenda Anderson opened in May 2011.

---

[2] Patients for whom Brenda Anderson obtained OWCP claim information are referred to throughout this affidavit as Union patients, even if they no longer receive treatment at Union.

Affidavit in Support of Criminal Complaint – Page 6

## The Fraud

20.     After the Andersons were terminated, Brenda Anderson retained Union patient records and the OWCP information contained within.  BFA continued to bill OWCP for unrequested and/or unnecessary Biofreeze sent to Union patients.

21.     From approximately August 2011 through at least February 2015, BFA fraudulently billed for an average of approximately 125 bottles of Biofreeze per month. A review of BFA's mailing procedures, however, indicates that BFA only sent approximately 30 bottles of Biofreeze per month during that same time period.

22.     BFA's Cedar Park, Texas address is a private mailbox at a commercial mail receiving agency named PostNet.  Brenda Anderson opened an account at PostNet in May 2011.  Once a month Brenda Anderson sent PostNet a package that contained approximately 30 smaller packages.  PostNet employees would then put postage on the smaller packages, mail them, and charge Brenda Anderson's credit card.

23.     Once a month, PostNet forwarded the mail in BFA's private mailbox to an address in Russellville, Arkansas, which surveillance and a witness indicated was Brenda Anderson's home address at the time.  In spring 2014, Brenda Anderson called PostNet and requested her forwarding address be changed to 2880 Serrano St. in Grand Prairie, Texas.

24.     On November 5, 2014, PostNet in Cedar Park, Texas informed investigators that a package from Brenda Anderson had been received, and, at investigators' request, gave the investigators the opportunity to observe as the package was opened. The outside of the box was addressed to PostNet with a return address of

Brenda Anderson at a UPS Store on 990 Hwy 287 N. Mansfield, Texas. Inside the package was another large box with a shipping label from Vitaminerals, a known Biofreeze provider, to Brenda Anderson at 2880 S. Serrano in Grand Prairie, Texas. Inside the large Vitaminerals box were small packages with the return address of BFA at 2800 E. Whitestone Blvd. Cedar Park, Texas; these smaller packages were addressed to 29 different Union patients.

25.      PostNet informed investigators that occasionally one of the smaller packages gets returned to PostNet due to an unknown address, and PostNet then forwards it back to Brenda Anderson at 2880 S. Serrano in Grand Prairie, Texas.

## Union Medical Supplies & Equipment, LLC (UMSE)

26.      On January 14, 2013, Tshombe Anderson used an online Texas Secretary of State Direct Account, obtained by his law firm[3], to form UMSE. Records indicate that the managers of UMSE are Tshombe Anderson's sister, Lydia Bankhead, and his mother, Marshea Anderson. On March 15, 2013, Lydia Bankhead enrolled the company with Affiliated Computer Services, and listed an office at 327 Cedar Creek Dr., Duncanville, Texas 75137. On April 25, 2013, Tshombe Anderson opened Region's Bank checking account #XXXX5909 for UMSE; he has signature authority on this account.[4]

27.      In April 2013, UMSE began fraudulently billing OWCP for DME delivered to the same Union patients as BFA. The first DME packages sent to Union patients by UMSE included a letter that stated DME would be provided by UMSE for their work-

---

[3] Tshombe Anderson's law firm, Anderson and Associates, closed in 2012, but the firm's Secretary of State Direct Account remained active after its closure. The Law Office of Tshombe Anderson, LLC opened in September 2013.
[4] Region's Bank checking account #XXXX5909 was closed January 2014.

**Affidavit in Support of Criminal Complaint – Page 8**

related injury at no cost to them.  The letter further explained that supplies would cease when billings were denied or when patients sent a written request to UMSE's Cedar Creek Dr. address in Duncanville, Texas.

28.      When Union learned that its patients were receiving DME from the Anderson's companies, they informed their patients that they were not supposed to be receiving those supplies, and asked the patients to bring any supplies they received from those providers to Union on their next visit.

29.      In January 2014, UMSE changed its address with OWCP to 2606 Martin Luther King Jr. Blvd, Suite 216, Dallas, Texas 75215, an address located next door to The Law Office of Tshombe A. Anderson, LLC, which is located at 2604 Martin Luther King Jr. Blvd, Dallas, Texas 75215.   To this day, UMSE packages use 2606 Martin Luther King Jr. Blvd, Suite 216 as the return address.  UMSE still claims to operate at this address today.

30.      Every DME transaction billed by UMSE since its formation appears to be fraudulent.

## Sky-Care Medical Supplies & Equipment, LLC (SMSE)

31.      On May 20, 2013, Tshombe Anderson formed Sky-Care Medical Supplies & Equipment, LLC (SMSE) again using his law firm's online Texas Secretary of State Direct Account. Records list Janet Anderson, Tshombe Anderson's sister-in-law, as the manager of SMSE.  On July 16, 2013, SMSE was enrolled with the Affiliated Computer Services and listed 4649 Loma Del Sur, Suite 3105, El Paso, Texas 79934 as the address for its office.

32.   In August 2013, SMSE began billing OWCP for the same Union patients as BFA and UMSE. Every DME transaction billed by SMSE since its formation appears to be fraudulent.

## American Federal Union Claims Advocates, LLC (AFUCA)

33.   On January 4, 2014, Tshombe Anderson formed American Federal Union Claims Advocates, LLC (AFUCA) again using Anderson and Associate's online Texas Secretary of State Direct Account.  Tshombe Anderson is listed as the only managing member of this company, and the business address is listed at 2604 Martin Luther King Jr. Blvd., Dallas, Texas 75215, which is the same address as The Law Office of Tshombe A. Anderson, LLC.  On March 14, 2014, JPMC account #XXXX8629 was opened in the name of AFUCA with Tshombe Anderson listed as the sole authorized signatory on the account.

## Fraudulent Billing by BFA, UMSE, and SMSE

34.   Because BFA fails to provide all of the DME for which it bills OWCP, it is engaging in fraudulent billing.  OWCP billing records from January 2011 through April 9, 2015 show that 292 patient claim numbers have been billed by at least one of the Andersons' three DME companies.  UMSE and BFA have billed OWCP for 84 of the same Union patient claim numbers; UMSE and SMSE have billed 22 of the same Union patient claim numbers; and all three companies have billed 33 of the same Union patient claim numbers.

35.   The following are examples of this duplicate billing:

a. M.P. has sustained many work injuries over time to her hands, knees, feet and shoulders and goes to Union for treatment of her injuries. At some point, she began receiving Biofreeze and electrode pads from BFA that were not requested or needed. Around May 2013, she began also receiving supplies from UMSE. The items, such as a knee brace, could pertain to her injuries; however, they were not the correct size so were completely unusable. She did not need these supplies nor were they requested. She told Union about the unnecessary supplies and that she did not want them. Union told her to refuse the packages, so she did.

The Andersons' DME companies did not bill OWCP for M.P. from May 2011 through February 2012. Then BFA billed throughout 2012 and the beginning of 2013 inflating their bills by approximately three-quarters. UMSE and BFA both billed OWCP for M.P. from April 2013 through July 2013. M.P. did not receive any supplies from July 2013 to February 2014. OWCP, however, was billed for M.P.'s unrequested and unneeded supplies 36 times for a total of $21,800.00. From August 2013 through April 9, 2015, only UMSE billed OWCP. During that time period, UMSE billed OWCP 185 times for M.P., for a total fraudulent billing amount of $124,950.00.

b. D.Z. injured his back at work in 2006. As of February 2014, he was going to Union for treatment. Union gave him all of the supplies he needed; however, D.Z. also received packages in the mail from UMSE and SMSE containing supplies that were not requested or needed. He told Union about the unnecessary supplies, and they told him to bring the supplies to the office. D.Z. took unopened UMSE and SMSE packages to Union. D.Z. sometimes received duplicate supplies, but he did not receive any supplies in July 2014.

From April 2013 through April 9, 2015, UMSE billed OWCP for D.Z. 165 times for a total of $106,310.30; SMSE billed OWCP 71 times for a total of $42,000.00. OWCP has been billed multiple times by UMSE and SMSE for DME devices for D.Z.'s ankle, knee, shoulder, and elbow, although his injury is to his back.

36.     From April 11, 2013 through April 9, 2015, UMSE billed approximately

$22,498,085.38 and was paid $19,573,704.13 by OWCP for DME that was not needed

nor requested by the patient or the doctor the patient is seeing. Because UMSE had no

authority to provide and bill for DME for Union patients, all funds billed by and paid to UMSE are fraudulent.

37.     From August 7, 2013 through April 9, 2015, SMSE billed approximately $1,833,895.19 and was paid $1,706,848.19 by OWCP for DME that was not needed nor requested by the patient or the doctor the patient is seeing.  Because SMSE had no authority to provide and bill for DME for Union patients, all funds billed by and paid to SMSE are fraudulent.

## BFA: Transfer of Fraudulent Proceeds from DOL Deposit Account BOA Acct #XXXX1831 (BFA Master Account)

38.     As of June 2011, OWCP began depositing BFA's claim payments into Bank of America (BOA) acct #XXXX1831 (BFA master account).  From June 2011 through April 9, 2015, OWCP paid BFA $733,932.36 on DME claims for Union patients; approximately **$464,686.00** is fraudulent.

39.     Using BOA acct #XXXX1831 (BOA master account), Brenda Anderson purchases DME supplies for BFA and pays for shipping.  She also transfers funds into four accounts, which have no other source than BOA acct #XXXX1831 (BFA master account) or each other:

   a.  BOA acct #XXXX1873 in the name Best First Administration DME of Austin, LLC Tax Account, from which BFA federal income taxes are paid yearly (BFA tax account);

   b.  BOA acct #XXXX7595, held in the names Brenda F. Anderson and Tshombe A. Anderson (BA 1);

   c.  BOA acct #XXXX2091, held in the name Brenda F. Anderson (BA 2);

    d.  BOA acct. #XXXX4261, a savings accounts held in the name Brenda F. Anderson (BA 3).

40.    From March 31, 2014 to January 2, 2015, Brenda Anderson transferred $57,752.00 from BOA acct#XXXX1831 (BFA master account) to BOA acct #XXXX1873 (BFA tax account).  Since at least January 2012, BOA acct#XXXX1831 (BFA master account) has been the sole source of funds for BOA acct #XXXX1873 (BFA tax account).

41.    From January 2, 2014 to May 12, 2015, Brenda Anderson deposited $55,000.00 worth of checks written to herself and drawn on BOA acct #XXXX1831 (BFA master account) into BOA acct #XXXX7595 (BA 1); since at least January 2, 2014, the BFA master account and BA 2 are BA 1's only source of funds.

42.    From January 2, 2014 to May 12, 2015, Brenda Anderson transferred $115,500.00 drawn on BOA acct #XXXX1831 (BFA master account) into BOA acct #XXXX2091 (BA 2).

43.    From March 25, 2014 to August 17, 2014, Brenda Anderson transferred $12,000.000 from BOA acct #XXXX1831 (BFA master account) into BOA acct #XXXX4261 (BA 3).

44.    Funds often move between BA 1, BA 2, and BA 3.  From January 2, 2014 through May 1, 2015, $53,030.00 moved from BOA acct #XXXX7595 (BA 1) into BOA acct #XXXX2091 (BA 2).  Between May 27, 2014 and May 28, 2014, $8,000 moved from BOA acct #XXXX7595 (BA 1) into BOA acct #XXXX4261 (BA 3).  From January 15, 2014 through May 15, 2015, $3,225 moved from BOA acct #XXXX2091 (BA 2) into

BOA acct #XXXX7595 (BA 1).  Between July 28, 2014 and September 15, 2014, $5,525

moved from BOA acct #XXXX2091 (BA 2) into BOA acct #XXXX4261 (BA 3).

## UMSE: Transfer of Fraudulent Proceeds from DOL Deposit Account JPMC #XXXX2686 (UMSE Master Account)

45.    As of February 20, 2014, OWCP began depositing UMSE's claim

payments into JPMC acct #XXXX2686 (UMSE master account) in the name of UMSE.

46.    From February 1, 2014 through April 9, 2015, UMSE billed OWCP

$16,764,465.00 and was paid **$14,499,632.00** into JPMC acct #XXXX2686 (UMSE

master account).  All funds in this account originate from UMSE's fraudulent OWCP

claim payments.  Every seven days, the funds in JPMC acct #XXXX2686 (UMSE master

account) are essentially split between four primary JPMC accounts:[5]

   a.  JPMC acct #XXXX3728 in the name of UMSE (UMSE 1)

   b.  JPMC acct #XXXX8060 in the name of UMSE (UMSE 2)

   c.  JPMC acct #XXXX1318 in the name of UMSE (UMSE 3)

   d.  JPMC acct #XXXX8629 in the name of AFUCA (AFUCA)

Three more accounts occasionally receive funds from JPMC acct #XXXX2686 (UMSE

master account):

   a.  JPMC acct #XXXX8662 in the name Lydia R. Bankhead (LB checking)

   b.  JPMC acct #XXXX6674 in the name Lydia R. Bankhead (LB savings)

   c.  JPMC acct #XXXX7569 in the name Lydia R. Bankhead or Porshea
       Anderson Taylor (sister P).

---

[5] Three other accounts belonging to Lydia Bankhead receive funds periodically from JPMC account #XXXX2686 (UMSE master account).  They are discussed below because they receive funds from other UMSE-related accounts as well.

47.     None of the accounts listed above are funded by an outside source; everything in these accounts originates with OWCP payments to UMSE.

48.     From the four accounts listed in a)-d), the funds are dispersed among 13 accounts.

49.     Between March 13, 2014 and March 26, 2015, a total of **$285,370.00** was moved in varying increments every seven days from JPMC acct #XXXX2686 (UMSE master account) to JPMC acct #XXXX3728 (UMSE 1).

50.     Between March 13, 2014 and March 26, 2015, a total of **$1,197,836.00** was moved in varying increments every seven days from JPMC acct #XXXX2686 (UMSE master account) to JPMC acct #XXXX8060 (UMSE 2).

51.     Between March 13, 2014 and March 26, 2015, a total of **$4,127,954.00** was moved in varying increments every seven days from JPMC acct #XXXX2686 (UMSE master account) to JPMC acct #XXXX1318 (UMSE 3).  Occasionally, funds move from JPMC acct #XXXX1318 (UMSE 3) to JPMC acct #XXXX8060 (UMSE 2); a total of $3,176,244.00 has been moved from JPMC acct #XXXX1318 (UMSE 3) to JPMC acct #XXXX8060 (UMSE 2) in the last year.

52.     Between March 13, 2014 and March 26, 2015, a total of **$5,984,014.00** was moved in varying increments every seven days from JPMC acct #XXXX2686 (UMSE master account) to JPMC acct #XXXX8629 (AFUCA). The chart below (on the next page) provides an overview of the fund movement described above.

| Bank | Bank Account | Name | Opened By | Amount | Money In | Money out |
|------|-------------|------|-----------|--------|----------|-----------|
| JPMC | (UMSE master account) XXXX2686 | UMSE | Bankhead & Tshombe | $14,499,632.00 | **From DOL** | To JPMC accts 3728, 8060, 1318, 8629, 7569 |
| JPMC | (UMSE 1) XXXX3728 | UMSE | Bankhead & Tshombe | $285,370.00 | From JPMC acct 2686 | No money out |
| JPMC | (UMSE 2) XXXX8060 | UMSE | Bankhead & Tshombe | $1,197,836.00 | From JPMC acct 2686 | To JPMC accts 0278, 6674, 8662, 6457, 7569 |
| JPMC | (UMSE 3) XXXX1318 | UMSE | Bankhead & Tshombe | $4,127,954.00 | From JPMC acct 2686 | To JPMC acct 8060 |
| JPMC | (AFUCA) XXXX8629 | AFUCA | Tshombe Anderson | $5,984,014.00 | From JPMC acct 2686 | To JPCM acct 0278 |

53.     Three more accounts occasionally receive funds from JPMC acct #XXXX2686 (UMSE master account):  JPMC acct #XXXX8662 in the name Lydia R. Bankhead (LB checking) has received **$914,709.50** since May 15, 2014; JPMC acct #XXXX6674 in the name Lydia R. Bankhead (LB savings) has received **$528,454.50** since June 23, 2014; JPMC acct #XXXX7569 in the name Lydia R. Bankhead or Porshea Anderson Taylor, who is Lydia Bankhead's sister, (sister P) received $87,230.00 total between December 1, 2014 and February 24, 2015.

## UMSE: Transfer of Fraudulent Proceeds from JPMC Acct #XXXX8060 (UMSE 2)[6]

54.     Lydia Bankhead uses JPMC acct #XXXX8060 (UMSE 2) to disperse money in many different ways, including paying her quarterly federal income taxes and purchasing DME supplies for UMSE, as well as transferring money among bank accounts.

---

[6] Please see Exhibit A for an illustration of the money movement out of JPMC acct #XXXX8060.

**Affidavit in Support of Criminal Complaint – Page 16**

55.     Since June 17, 2014, $66,912.00 has been transferred from JPMC acct #XXXX8060 (UMSE 2) to JPMC checking acct #XXXX6457[7] in the name Lydia R. Taylor, who is Lydia Bankhead's niece.

56.     Between April 4, 2014 and August 11, 2014, JPMC acct #XXXX8060 (UMSE 2) transferred $228,006.00 to Lydia Bankhead's JPMC checking acct #XXXX8662 (LB checking).

57.     Between May 8, 2014 and September 30, 2014, JPMC acct #XXXX8060 (UMSE 2) transferred $63,224.00 to Lydia Bankhead's JPMC savings acct #XXXX6674 (LB savings).

58.     Between October 3, 2014 and February 2015, JPMC savings acct #XXXX6674 (LB savings) transferred $374,500 in seven periodic transactions to JPMC checking acct #XXXX8662 (LB checking).  The checking account is used to pay for daily expenses to stores such as Kroger, Walmart, and Amazon.com to pay off Lydia Bankhead's credit card, and to pay off a black Lexus RX450, VIN #JTJZB1BA7E2009557; however it occasionally transfers money back to the savings account and to other bank accounts.

59.     Between September 30, 2014 and February 9, 2015, JPMC checking acct #XXXX8662 (LB checking) transferred $178,000 into Lydia Bankhead's savings account (JPMC savings acct #XXXX6674) (LB savings).

---

[7] Lydia Taylor also receives money into her JPMC checking acct #XXXX6457 from SMSE.  The disposition of these funds is discussed in the SMSE section below.

60.     From April 3, 2014 through March 14, 2015, Lydia Bankhead wrote herself $186,000.00 worth of checks on JPMC checking acct #XXXX8662 (LB checking) and deposited those into her Arvest Bank checking acct #XXXX6805.

61.     Between May 8, 2014 and January 28, 2015, Lydia Bankhead also wrote herself $37,500.00 worth of checks on JPMC checking acct #XXXX8662 (LB checking) and deposited those into her Arvest Bank savings acct #XXXX6915.

62.     On August 18, 2014, JPMC acct #XXXX8060 (UMSE 2) transferred $10,000 to Lydia Bankhead and Porshea Taylor's JPMC acct #XXXX7569 (sister P). Between October 27, 2014 and January 28, 2015, Lydia Bankhead's JPMC savings account #XXXX6674 (LB savings) transferred $30,000.00 to Lydia Bankhead and Porshea Taylor's JPMC acct #XXXX7569 (sister P).

## UMSE: Transfer of Fraudulent Proceeds from JPMC Acct #XXXX8629 (AFUCA)

63.     From JPMC acct #XXXX8629 (AFUCA), funds move into three accounts, two of which belong to Anderson's law practice:

   a.  JPMC acct #XXXX0278 in the name of The Law Office of Tshombe A. Anderson, LLC (law office 1);

   b.  JPMC acct #XXXX9265 in the name of The Law Office of Tshombe A. Anderson, LLC (law office 2); and

   c.  JPMC acct #XXXX0660 in the name of Tshombe Anderson (TA personal account).

64.     Between September 4, 2014 and February 24, 2015, **$1,574,421.00** was wired from JPMC acct #XXXX8629 (AFUCA) to JPMC acct #XXXX0278 (law office 1).

65.     Between September 4, 2014 and February 12, 2015, **$260,000.00** was wired from JPMC acct #XXXX8629 (AFUCA) to JPMC acct #XXXX9265 (law office 2).

66.     Between July 24, 2014 and February 12, 2015, **$105,000.00** was wired from JPMC acct #XXXX8629 (AFUCA) to JPMC acct #XXXX0660 (TA personal account).

67.     On or about March 2014, Tshombe Anderson signed two checks, dated March 19, 2014, to his law office totaling $1,071.03 drawn on JPMC acct #XXXX8060 (UMSE 2) and deposited into JPMC acct #XXXX0278 (law office 1); Tshombe Anderson signed three checks, dated March 21, 2014, to his law office totaling $4,100.00 drawn on JPMC acct #XXXX8060 (UMSE 2) and deposited into JPMC acct #XXXX0278 (law office 1).

## SMSE: Transfer of Fraudulent Proceeds from DOL Deposit Account BOA Acct #XXXX6213

68.     As of August 15, 2013, OWCP began depositing SMSE's claim payments into Bank of America (BOA) acct #XXXX6213 (SMSE master account) in the name of UMSE.

69.     From August 15, 2013 through April 9, 2015, SMSE billed OWCP $1,833,895.19 and was paid **$1,706,848.19** into BOA acct #XXXX6213 (SMSE master account). All funds in this account originate from SMSE's OWCP claim payments. The funds in BOA acct #XXXX6213 (SMSE master account) are then transferred to two SMSE accounts: BOA acct #XXXX2317 (SMSE 1) and BOA acct #XXXX0710 (SMSE

2);  all funds in SMSE 1 and 2 originate from the SMSE master account and are therefore fraudulent proceeds.

70.     Between January 2, 2014 and May 11, 2015, **$555,158.00** was transferred from BOA acct #XXXX6213 (SMSE master account) to BOA acct #XXXX2317 (SMSE 1). Occasionally, funds in BOA acct #XXXX2317 (SMSE 1) move into BOA acct #XXXX0710 (SMSE 2); from April 10, 2014 to April 1, 2015, $416,365.00 moved from SMSE 1 to SMSE 2.

71.     Between January 2, 2014 and May 11, 2015, **$917,271.00** was transferred from BOA acct #XXXX6213 (SMSE master account) to BOA acct #XXXX0710 (SMSE 2). From BOA acct #XXXX0710 (SMSE 2), funds are transferred to Janet Anderson, who is Lydia Bankhead's sister-in-law; to Lydia Taylor; to Tshombe Anderson's law firm through JPMC acct #XXXX0278 (law office 1); and to Lydia Bankhead's Arvest Bank checking acct #XXXX6805.

72.     Between October 3, 2014 and May 8, 2015, **$188,000.00** has moved from BOA acct #XXXX0710 (SMSE 2) to Janet Anderson's BOA acct #XXXX1695; since September 2014, funds in BOA acct #XXXX1695 have been the sole source of funding for Janet and Ayyub Anderson's BOA acct #XXXX1167, which received $87,000 between September 26, 2014 and July 11, 2015. From BOA acct #XXXX1167, Janet Anderson writes checks to herself and to her husband which are then deposited into a Navy Federal Credit Union account, where the fraud proceeds are comingled with Ayyub Anderson's legitimate government contractor salary.

73.     From BOA acct #XXXX0710 (SMSE 2), funds are also transferred to Lydia Taylor's JPMC checking acct #XXXX6457. From July 25, 2014 through March 19, 2015, **$195,824.00** has been moved from SMSE 2 to Lydia Taylor's JPMC checking account. From June 13, 2014 through April 10, 2015, the total deposited into Lydia Taylor's JPMC checking acct #XXXX6457 from UMSE 2 and SMSE 2 is **$262,736.00**. From June 18, 2014 through April 10, 2015, Lydia moved $101,460.51 from her JPMC checking acct #XXXX6457 to her JPMC savings acct #XXXX0588. From her JPMC savings acct #XXXX0588, Lydia Taylor obtained a $41,500 cashier's check, which she used to purchase a 2014 Jeep Grand Cherokee VIN 1C4RJEBG9EC521848 at a Frisco, Texas dealership. An analysis of Lydia Taylor's bank records and the Texas Workforce Commission indicate that she does not have any legitimate source of income.

74.     Between December 19, 2013 and May 15, 2014, BOA acct #XXXX0710 (SMSE 2) transferred $72,426 to JPMC acct #XXXX0278 in the name of The Law Office of Tshombe A. Anderson, LLC (law office 1).

75.     Between January 13, 2014 and May 15, 2014, BOA acct #XXXX0710 (SMSE 2) transferred $57,965 to Lydia Bankhead's Arvest Bank checking acct #XXXX6805.

76.     The chart below (on the next page) summarizes the movement of SMSE fraudulent proceeds as described above:

| Bank | Bank Account | Name on Account | Opened By | Amounts | $ In from | $ out to |
|------|-------------|-----------------|-----------|---------|-----------|----------|
| Bank of America | (SMSE master account) XXXX6213 | SMSE | Janet Anderson | **$1,706,848.19** | **From DOL** | BOA accts 0710, 2317 |
| Bank of America | (SMSE 1) XXXX2317 | SMSE | Janet Anderson | $555,158.00 | From BOA acct 6213 | BOA acct 0710 |
| Bank of America | (SMSE 2) XXXX0710 | SMSE | Janet Anderson | $917,271.00 | From BOA acct 6213, 2317 | BOA accts 6213, 1695, 2317; JPMC accts 6457, 0588, 0278; Arvest acct 6805 |
| Bank of America | XXXX1695 | Janet Anderson | Janet Anderson | $188,000.00 | From BOA acct 0710 | BOA acct 1167 |
| Bank of America | XXXX1167 | Janet and Ayyub Anderson | Janet and Ayyub Anderson | $87,000.00 | From BOA acct 1695 | Transfers to NFCU |

## The Law Office of Tshombe A. Anderson, LLC located at 2604 Martin Luther King Jr. Blvd., Dallas, Texas & the UMSE Office located at 2606 Martin Luther King Jr. Blvd, Suite 216, Dallas Texas 75215

77.     On September 27, 2013, Tshombe Anderson formed The Law Office of Tshombe A. Anderson, LLC.  Previously, Tshombe Anderson's law office was called Anderson & Associate's.  The name change appears to coincide with disciplinary action that was taken by the State Bar of Texas against Tshombe Anderson.  Tshombe Anderson is listed as the only managing member of this law office, and the business address is listed at 2604 Martin Luther King Jr. Blvd., Dallas, Texas 75215.  J.P. Morgan Chase (JPMC) accounts #XXXX0278 and #XXXX9265 were opened in the name of The Law Office of Tshombe A. Anderson, LLC, and Tshombe Anderson is the sole authorized signatory on these accounts.

78.     Surveillance indicates that Tshombe Anderson goes to the law office location regularly.  A trash run conducted on April 17, 2014 examined all the trash in the

dumpster used by the entire strip mall where the law office is located. A lot of shred bags were present, but their origin and contents are unknown.

79.    The trash run uncovered the first page of a four page March 2014 bank statement for JPMC acct #XXXX8629 in the name AFUCA (AFUCA). The AFUCA account was opened March 14, 2014 using $10,000.00 of unknown origin, and this was the first page of the first account statement. The statement showed a beginning balance of $0.00 and an ending monthly balance of $395,321.00. The statement further showed four separate online transfers on March 20, 2014 from JPMC acct #XXXX2686 (UMSE master account) to the AFUCA account, in the amounts of $107,820.00; $105,475.00; $102,685.00; and $84,034.00. The statement showed that same day, an online transfer of $84,034.00 was made from the AFUCA account to the JPMC acct #XXXX0278 in the name of The Law Office of Tshombe A. Anderson, LLC (law office 1). The statement further showed another online transfer from the UMSE master account to the AFUCA account occurred on March 27, 2014 in the amount of $69,341.00.

80.    In addition to the partial bank statement, an empty Priority Mail envelope from Janet Anderson addressed to the Law Firm of Anderson & Associates (the former name of Tshombe Anderson's law firm) was located in the trash.

81.    Additional surveillance shows that 2602 Martin Luther King Jr. Blvd, the address for AFUCA on bank statements, and 2604 Martin Luther King Jr. Blvd, the address for The Law Office of Tshombe A. Anderson, are not separate spaces but have been combined into a single or shared office space. From the front of the building, both

2602 and 2604 have signs on their doors indicating they are part of The Law Office of Tshombe A. Anderson.

82.     Currently, J.P. Morgan Chase Bank has 2602 Martin Luther King Jr. Blvd, Dallas, Texas 75215 as the address of record for JPMC acct #XXXX8629 (AFUCA); the Texas Secretary of State has AFUCA's address listed as 2604 Martin Luther King Jr. Blvd. Both 2602 and 2604 are addresses for The Law Office of Tshombe A. Anderson.

83.     UMSE's address is 2606 Martin Luther King Jr. Blvd., Suite #216, which is an upstairs suite in the same building as 2602 and 2604. In January 2015, investigators visited suite 216 in the early afternoon. The entrance to Suite 216 is located in an interior hallway upstairs from Tshombe Anderson's law office. Suite 216 has a solid brown/wooden door bearing a plaque with the name "Union Medical Supplies & Equipment, LLC." clearly written over two lines. An investigator knocked on the door, but there was no answer. An uninterested witness who works in the office across the hall from Suite 216, looked out her office's door when she heard the knock across the hall; she described Suite 216 to the investigator as an empty suite owned by the law office downstairs.

84.     As described above, the return address on UMSE packages was 2606 Martin Luther King Jr Blvd., Suite #216. On August 7, 2015, investigators interviewed a postal carrier who was assigned for more than a year to the mail route that delivers to the UMSE empty office and The Law Office of Tshombe Anderson located at 2602/2604 Martin Luther King Jr. Blvd. In response to investigators' questions about UMSE packages being marked "return to sender", she stated: "It's a fraud! The parcels being

returned belong to the attorney downstairs, Mr. Tshombe Anderson, it's his medical company." She also explained that initially she attempted to deliver UMSE parcels marked "refused" or "return to sender" to the suite above Tshombe Anderson's law office, but the office was always vacant and no one ever answered the door to take delivery. As a result, those parcels were sent to dead mail per postal regulations. Later on, she was informed that Tshombe Anderson would accept delivery of those packages downstairs at his law office. In her current position as a mail sorter, the postal worker stated that within the last week she has personally seen two return to sender parcels marked "refused" or "return to sender" for the UMSE address above Tshombe Anderson's law office.

85. Bank records for JPMC accounts #XXXX0278, #XXXX1788, and #XXXX9265 opened and held in the name of The Law Office of Tshombe A. Anderson, LLC, for which Tshombe Anderson is the sole authorized signatory, were reviewed as a part of this investigation.[8] A review of these records showed that the vast majority of expenditures from these accounts were for personal expenses, and very few business related expenditures.

## Other Properties Involved

*2880 S. Serrano Grand Prairie, Texas 75054*

86. As described above, from June 2011 through January 2015, Brenda Anderson billed approximately 30 of the same claimants every Tuesday for one unit of

---

8 In accordance with proper procedures, the bank records were provided to Affiant after a filter team had thoroughly vetted the records and removed any potentially privileged information.

Biofreeze charging $125.00 per item. In this same time period, Brenda Anderson billed

OWCP for 4,255 bottles of Biofreeze for a total of $572,286.00. The Biofreeze was at

least partially obtained from Vitaminerals.

87.     Approximately 52 invoices from Vitaminerals were reviewed. Vitaminerals

charges approximately $7.60 per bottle of Biofreeze. From June 2011 through November

18, 2014, Brenda Anderson purchased 1,186 bottles of Biofreeze, paying a total of

$9,289.25. The last 5 invoiced orders (6/24/2014, 7/25/2014, 9/1/2014, 10/7/2014,

11/18/2014) were shipped to 2880 S. Serrano Grand Prairie, Texas 75054, which is her

current residential address.

88.     Beginning February 1, 2015, OWCP stopped accepting the code Brenda

Anderson had been using to bill the Biofreeze at $125.  Immediately after this change,

Brenda Anderson attempted to bill OWCP 10 times in the month of February 2015 for

Biofreeze at $125 per bottle.  All bills were denied.

89.     In March 2015, Brenda Anderson changed her strategy and began

fraudulently billing OWCP using a high-value DME code for a type of garment BFA

began sending Union patients;  none of these patients had a prescription for such a

garment nor a use for one.  Brenda Anderson fraudulently billed OWCP $2,500.00

dollars per garment, for a total of $25,000.00 in March 2015 alone.

90.     On May 11, 2015, D.T., a Union patient, was interviewed regarding her

receipt of one of these garments from BFA. D.T. was injured on the job in June 2007 and

went to Union for treatment. D.T. receives treatment at Union every three months and

receives all necessary medical supplies from them.  D.T. still receives Biofreeze

approximately once a month from BFA, which she did not request or need. D.T. has received DME from UMSE and SMSE in the past, which she did not request or need. D.T. takes unopened packages from BFA, UMSE and SMSE to Union.

91.     D.T. provided the last package she received in the mail from BFA, on or about May 8, 2015. The package was addressed to D.T. with a return address for BFA at the PostNet location. The package contained one bottle of Biofreeze and one compression glove.  On May 8, 2015, BFA billed OWCP $2,500.00 for one garment (the unneeded compression glove) provided to D.T.

92.     The compression glove supplier is a company named Tenspros.  Invoices from this company show that Brenda Anderson is ordering these supplies online through BFA. Brenda Anderson placed orders from this company on February 17, 2015, April 27, 2015, and May 30, 2015.  Tenspros ships the ordered supplies to Brenda Anderson's residence at 2880 S. Serrano, Grand Prairie, Texas.

93.     Currently, the 2880 S. Serrano, Grand Prairie, Texas is the address on record at Bank of America for the BOA acct #XXXX1831 (BFA master account); BOA acct #XXXX1873 in the name Best First Administration DME of Austin, LLC Tax Account, from which BFA federal income taxes are paid yearly (BFA tax account); BOA acct #XXXX7595, held in the names Brenda F. Anderson and Tshombe A. Anderson (BA 1); BOA acct #XXXX2091, held in the name Brenda F. Anderson (BA 2); and BOA acct #XXXX4261, a savings accounts held in the name Brenda F. Anderson (BA 3).

*1422 Lands End Point North, Russellville, AR 72802*

94.     The investigation determined that Stamps.com was the primary postage provider used by the Andersons to mail packages of DME to Union patients.  Throughout the investigation, the account and tracking numbers provided by Stamps.com have been monitored. The USPS track and confirm database was queried by inputting the tracking number on the package label or from Stamps.com to ascertain the first scan point location for each package mailed by UMSE to OWCP claimants.

95.     The initial scan for packages sent by UMSE was completed at the Little Rock Processing & Distribution Center, Little Rock, Arkansas 72206.  Lydia Bankhead and her mother, Marshea Anderson, resided at 2104 Skyline Dr., Russellville, Arkansas 72802 until approximately January 2014.  In January 2013, a change of address request was filed to forward UMSE mail from 327 Cedar Creek, Duncanville, Texas to 2104 Skyline, Russellville, Arkansas 72802.

96.     Initially the scan for packages sent by SMSE was done at a post office in White Sands Missile Range, NM.  At that time, investigative activity revealed that Janet Anderson and her husband Ayyub Anderson resided at 416 Zeus, White Sands Missile Range, New Mexico.

97.     In December 2013, the Russellville, Arkansas post office confirmed that about once a week for the last few months, a black female driving a silver SUV dropped off a wire container full of mail.  the postal clerk remembered being suspicious of the mailings because the return address was listed in Texas.

98.     In December 2013, a USPS rural carrier in Russellville, Arkansas confirmed that Lydia Bankhead and Marshea Anderson resided at 2104 Skyline Dr. and that Lydia Bankhead often received mail with the word "medical" written in the return address and that Lydia Bankhead and Tshombe Anderson received mail for Union Medical Supplies & Equipment on numerous occasions.

99.     In January 2014, Lydia Bankhead notified OWCP that UMSE was changing its address to 2606 Martin Luther King Jr. Blvd Suite 216 Dallas, Texas. This unit is located above Tshombe Anderson's law firm. Surveillance in January 2014 showed no activity at this unit.

100.    In March 2014, Lydia Bankhead and Marshea Anderson moved to 1422 Lands End North, Russellville, Arkansas 72802.

101.    Stamps.com provided an IP address of 173.216.123.143 used to access the SMSE account on October 30, 2014. The same IP address was used to access the UMSE account on November 5, 2014. A subpoena to Suddenlink confirmed that the IP address 173.216.123.143 was registered to Lydia Bankhead at 1422 Lands End Point North, Russellville, Arkansas 72802.

102.    Surveillance from March 16, 2015 through March 18, 2015 did not show any residents at 2104 Skyline Dr. However, it did show Lydia Bankhead leaving her residence at 1422 Lands End Point North in a Dark Lexus SUV license plate 742 TWH to go to the residence at Skyline Dr. where she briefly checked the mail and then left.

103.    On March 27, 2015, a woman matching Lydia Bankhead's description and driving a Lexus SUV with license plate 742 TWH dropped off packages at the

Russellville Post Office with return addresses to UMSE in Dallas, Texas.  Packages with
an SMSE return address were also being dropped at the Russellville Post Office.

104.    "The Brace Shop," a large supplier for UMSE, provided an IP address of
173.216.47.29 for UMSE orders placed on June 16, June 18, and June 20, 2015. A
subpoena to Suddenlink confirmed that the IP address 173.216.47.29 accessed on the
dates and times of these orders is registered to Lydia Bankhead, 1422 Lands End Point
North, Russellville, Arkansas 72802.

## CONCLUSION

105.    Based on the preceding information, Affiant believes there is probable
cause to believe that the defendants, Tshombe Anderson, Brenda Anderson, and Lydia
Bankhead have committed violations of 18 U.S.C. § 1347 (Health Care Fraud), 18 U.S.C.
§641 (Theft of Government Funds), and 18 U.S.C. § 1341 (Mail Fraud).


_____
Kristi Frank
Special Agent
United States Department of Labor
Office of Inspector General


Subscribed and sworn to before me on August 25, 2015, and I find probable cause.

_____
Paul D. Stickney
United States Magistrate Judge


**Affidavit in Support of Criminal Complaint – Page 30**



EXHIBIT A

Movement of Funds from January 2014
through March 14, 2015 out of JPMC 8060